## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Criminal No.** |
| | ) | |
| BRUCE D. HOPFENGARDNER, | ) | Count One: 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| Defendant. | ) | Count Two: 18 U.S.C. § 1956(h) |
| | ) | (Money Laundering Conspiracy) |
| | ) | Forfeiture : 18 U.S.C. § 982 |

## INFORMATION

The United States charges:

### COUNT ONE
### 18 U.S.C. § 371
### (conspiracy)

At all relevant times:

1.    From in or about December 2003 until in or about July 2004, in Iraq and elsewhere, Defendant

### Bruce D. HOPFENGARDNER ("HOPFENGARNDER")

and others did knowingly, willfully, and unlawfully conspire with others known and unknown to violate a statute of the United States, namely Title 18, United States Code, Section 1343 (wire fraud), by, among other things, devising a scheme to defraud and obtain money through false and fraudulent pretenses involving wire communications and then transmitting the proceeds of the scheme to and within the United States by means of wire communications in interstate and foreign commerce.

## BACKGROUND

2.      On May 8, 2003, the United States and the United Kingdom presented a
joint letter to the United Nations stating that they "and Coalition partners, acting under
existing command and control arrangements through the Commander of Coalition Forces,
have created the Coalition Provisional Authority (CPA), which includes the Office of
Reconstruction and Humanitarian Assistance (ORHA), to exercise powers of government
temporarily, and, as necessary, especially to provide security, to allow the delivery of
humanitarian aid, and to eliminate weapons of mass destruction."

3.      The CPA was primarily staffed by Department of Defense (DOD)
employees, including civilians and members of the military forces detailed to the CPA
("DOD employees"), as well as DOD contractors and subcontractors, who were
responsible for the management, accounting, and expenditure of all of the aforementioned
funds.

4.      Defendant **HOPFENGARDNER**, was an officer in the United States Army
Reserve and served as a special advisor to the CPA-SC in Al-Hillah, Iraq.  Defendant
**HOPFENGARDNER**'s duties included recommending the expenditure of CPA funds by
CPA-SC officials for law enforcement-related projects related to the reconstruction of
Iraq, including projects involving the Police Academy in Al-Hillah.

5.      Phillip Bloom is a United States citizen who operated and controlled several
construction and service companies in Iraq and Romania doing business, among other

-2-

places, in Al Hillah, Iraq, with CPA-SC.

6.      Robert Stein was a DOD contract employee, who served as the Comptroller

and Funding officer for CPA-SC and was assigned to CPA-SC in Al-Hillah, Iraq.  In his

capacity as Comptroller and Funding officer, Stein controlled the expenditure of

approximately $82 million dollars in CPA funds which were to be used for the payment

of contract services rendered in Al-Hillah, Iraq for reconstruction projects.

7.      Co-conspirator One was an officer in the United States Army Reserve, who

served as the Chief of Staff for the CPA-SC.  As such, he was responsible for overseeing

the operations and supervising the CPA personnel, including those responsible for

contracts entered into and expenditures made by and for the CPA-SC in Al-Hillah, Iraq,

including payments authorized by Stein.

8.      Co-conspirator Two was an officer in the United States Army Reserve who

served under the direct supervision of Co-conspirator One and Stein at the CPA-SC in Al-

Hillah, Iraq.  Co-conspirator Two's duties included serving as the Deputy Comptroller to

Stein and, in his absence, as the acting Comptroller for the CPA-SC.

## THE CONSPIRACY AND ITS OBJECTS

9.      Beginning in or around December 2003 and continuing until at least July

2004, in Al-Hillah, Iraq and elsewhere, Defendant **HOPFENGARDNER**, Bloom, Stein

and Co-conspirators One and Two, as well as others known and unknown, did knowingly

and willfully combine, conspire, confederate, and agree with others known and unknown

to the United States to violate a statute of the United States, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, by devising a scheme and artifice to defraud the CPA and others and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, through the use of interstate wire transmissions via e-mail communications, telephone communications, and wire transfers of funds, all in violation of Title 18, U.S. Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

10.    It was a part of the conspiracy that Defendant **HOPFENGARDNER** and others would by deceit, craft, trickery and dishonest means, defraud the CPA and others to obtain money and property by false and fraudulent pretenses, in that Defendant **HOPFENGARDNER** and his co-conspirators, would, among other things, do the following:

11.    Recommend numerous construction projects in Al-Hillah, Iraq, that were intended to be, and would be, steered to Bloom and his companies through a rigged bidding process with one "low bid" from one of Bloom's companies and several "dummy" bids. Further, Defendant **HOPFENGARDNER** would and did meet and communicate with Bloom, including through use of wire communications, prior to the commencement of the bidding process for specific contracts. During such meetings, Defendant **HOPFENGARDNER** would provide Bloom with material information related to the proposed projects.

-4-

12.    Structure the contracts awarded to Bloom in amounts under $500,000, which was the dollar limit of Stein's authority, in order to conceal the transactions with Bloom and avoid scrutiny by the CPA's auditors in Baghdad, Iraq, and others. Further, Stein and others would use their official positions to cause, or authorize, payment on the fraudulently awarded contracts to Bloom and his companies. In particular, Stein would authorize payments on CPA Form 44, exceeding without authorization its $15,000 payment ceiling.

13.    Facilitate and conceal Bloom's submission of multiple bids on the same CPA contract in the names of different companies which were either non-existent or controlled by Bloom. The bids submitted included both the "low" bid and several "high" bids which enabled Defendant **HOPFENGARDNER**, Stein and others to steer millions of dollars in contracts to Bloom and his companies.

14.    Solicit and accept money and other things of value, such as secret employment or potential future employment, business or first class plane tickets, watches and other jewelry, alcohol, cigars, sexual favors from women provided by Bloom at his villa in Baghdad and at least one other location, as well as money laundering services, from Bloom in exchange for taking action favorable to Bloom and his interests, for refraining from taking action that was unfavorable to Bloom and his interests, and for unlawfully conveying property to him, including real property and government-owned or acquired personal property such as body armor and other military equipment.

-5-

15.     Steal U.S. currency including appropriated funds known as "R3P funds" and Development Funds for Iraq ("DFI") that were designated to be used for the reconstruction of Iraq. A portion of the stolen currency was smuggled into the United States by Defendant **HOPFENGARDNER**, Stein and their co-conspirators via commercial aircraft. Stein and others also delivered some of the stolen currency to Bloom in Iraq, who knowing that the currency was stolen, would deposit it in foreign bank accounts, including accounts under his control in Iraq, Switzerland and Romania. At least a portion of such funds were then transferred to bank accounts controlled by Defendant **HOPFENGARDNER** and Stein or Bloom would make payments on their behalf to purchase real estate, cars, a motorcycle, a recreational vehicle and jewelry.

## OVERT ACTS

16.     In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by one or more of the conspirators in Al-Hillah, Iraq and elsewhere:

17.     In or about December 2003, Defendant **HOPFENGARDNER** and Stein sold seized Iraqi bayonets to Bloom for $6,500.

18.     In or about late December 2003, Defendant **HOPFENGARDNER** and Stein met with Bloom in Baghdad, Iraq, at which time Bloom offered to pay them $100,000 "up front" and $10,000 per month thereafter to steer contracts to Bloom.

-6-

19.     In or around early January 2004, Defendant **HOPFENGARDNER** advised Bloom that Bloom would have to submit dummy bids along with his actual bid in order to receive the CPA-SC contracts.

### Police Academy Building Demolition Contract

20.     On or about January 3, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8016, Police Academy building demolition.

21.     On or about January 4, 2004, Stein caused the award of Contract 8016, the Police Academy building demolition, to Bloom's company, known as Global Business Group Logistics or GBG (hereinafter referred to as "GBG"), in the amount of $491,000.

22.     On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8016, each payment constituting a separate overt act:

| Date | Amount |
|---------|----------|
| 1/4/04 | $200,000 |
| 1/12/04 | $100,000 |
| 1/13/04 | $102,700 |
| 3/23/04 | $88,300 |

23.     On or about January 5, 2004, Bloom sent an e-mail to Defendant **HOPFENGARDNER** which stated: "thanks for the police academy."

**Police Academy Classrooms contract**

24.    On or about January 17, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8064, Police Academy classrooms.

25.    On or about January 20, 2004, Stein caused the award of Contract 8064, Police Academy classrooms, to Bloom's company, GBG, in the amount of $470,800.

26.    On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8064, each payment constituting a separate overt act:

| Date | Amount |
|---------|-----------|
| 1/20/04 | $200,000 |
| 3/12/04 | $150,000 |
| 4/4/04 | $120,000 |

**Police Academy Security Wall contract**

27.    On or about January 17, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8069, Police Academy security wall.

28.    On or about January 22, 2004, Stein caused the award of Contract 8069, Police Academy security wall, to Bloom's company, GBG, in the amount of $475,000.

29.    On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8069, each payment constituting a separate overt act:

| Date | Amount |
|------|--------|
| 1/25/04 | $200,000 |
| 3/7/04 | $150,000 |
| 3/30/04 | $125,000 |

**Police Academy Water Systems contract**

30.    On or about January 22, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8070, Police Academy water system.

31.    On or about January 24, 2004, Stein caused the award of Contract 8070, Police Academy water system, to Bloom's company, GBG, in the amount of $495,000.

32.    On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8070, each payment constituting a separate overt act:

| Date | Amount |
|------|--------|
| 1/24/04 | $200,000 |
| 2/21/04 | $200,000 |
| 4/3/04 | $95,000 |

### Mobile Command Posts contract

33.    On or about January 22, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8089, Mobile Command Posts.

34.    On or about January 31, 2004, Stein advised Bloom that Defendant **HOPFENGARDNER** needed Bloom's bids for the mobile command post contracts.

35.    On or about January 31, 2004, Bloom advised Stein that he was working on the dummy bids for such contracts.

36.    On or about January 31, 2004, Stein caused the award of Contract 8089, Mobile Command Posts, to Eastview Construction, a company controlled by Bloom, in the amount of $455,000.

37.    On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8089, each payment constituting a separate overt act:

| Date | Amount |
|---|---|
| 1/31/04 | $200,000 |
| 3/23/04 | $255,000 |

### Mobile Archeological Command Posts contract

38.    On or about January 22, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8091, Mobile Archeological Command Posts.

39.    On or about January 31, 2004, Stein caused the award of Contract 8091, Mobile Archaeological Command Posts, to Eastview Construction, a company controlled by Bloom, in the amount of $498,600.

40.    On or about the dates listed below, Stein caused the payments listed below to be made in connection with Contract 8091, each payment constituting a separate overt act:

| Date | Amount |
|---------|-----------|
| 1/31/04 | $200,000 |
| 1/31/04 | $298,600 |
| 3/30/04 | $125,000 |

### Police Academy Generator/Sleeping Quarters contract

41.    On or about January 23, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8092, Police Academy generator/sleeping quarters.

42.    On or about February 1, 2004, Stein caused the award of Contract 8092, Police Academy generator/sleeping quarters, to Eastview Construction, a company controlled by Bloom, in the amount of $397,530.

-11-

43.   On or about the dates listed below, Stein caused the payments listed below to be made in connection with Contract 8092, each payment constituting a separate overt act:

| Date | Amount |
|------|--------|
| 3/2/04 | $200,000 |
| 3/30/04 | $97,530 |

**Police Academy Living Quarters Contract**

44.   On or about January 23, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8093, Police Academy living quarters.

45.   On or about February 2, 2004, Stein caused the award of Contract 8093, Police Academy living quarters, to Eastview Construction, a company controlled by Bloom, in the amount of $498,235.

46.   On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8093, each payment constituting a separate overt act:

| Date | Amount |
|------|--------|
| 2/2/04 | $200,000 |
| 3/9/04 | $150,000 |
| 4/2/04 | $148,235 |

## The Initial Kickbacks and Bribery Payments

47.    On or about January 29, 2004, Defendant **HOPFENGARDNER** requested that Bloom pay for the air fare for his trip to and from the United States for leave and the air fare for a trip he and his spouse planned to take from San Francisco to Fort Lauderdale while on leave.

48.    On or about January 30, 2004, Defendant **HOPFENGARDNER** provided Bloom with his bank account information in the United States so that Bloom could deposit $50,000 into **HOPFENGARDNER**'s account.

49.    On or about February 9, 2004, Bloom caused the transfer of funds from accounts he controlled at the Credit Bank of Iraq through its correspondent bank, the National Bank of Kuwait, in the approximate amount of $50,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

50.    On or about February 9, 2004, Bloom caused the transfer of funds from accounts he controlled at the Credit Bank of Iraq through its correspondent bank, the National Bank of Kuwait, in the approximate amount of $10,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

### Demolition of Ba'ath Party Headquarters Contract

51.    On or about January 31, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8167, Demolition of Ba'ath Party Headquarters.

52.    On or about February 19, 2004, Stein caused the award of Contract 8167, Demolition of Ba'ath Party Headquarters to GBG, one of Bloom's companies, in the amount of $452,800.

53.    On or about February 22, 2004, Stein caused the payment of $452,800 to Bloom in connection with Contract 8167.

### Security Facility Upgrades Contract

54.    On or about February 22, 2004, Defendant **HOPFENGARDNER** caused the submission and approval of a funding request for the Contract 8265, Security Facility Upgrades.

55.    On or about March 2, 2004, Stein requested that Bloom provide five additional quotes for the additional security contract for the police academy, stating that "[a]ll I have is yours for [$]498910."

56.    On or about March 15, 2004, Stein caused the award of Contract 8265, Security Facility Upgrades to Bloom.

57.    On or about the dates listed below, Stein caused the payments listed below to be made to Bloom in connection with Contract 8265, each payment constituting a separate overt act:

| Date | Amount |
|------|--------|
| 3/15/04 | $200,000 |
| 4/5/04 | $248,500 |

### The Theft of Currency and Additional Payments by Bloom

58.    In or about late February 2004, with the assistance of Stein, Defendant **HOPFENGARDNER** stole approximately $120,000 of funds appropriated by the U.S. government for the reconstruction of Iraq, promising Stein he would use a portion of the funds to pay certain of Stein's debts in the United States.

59.    On or about March 1, 2004, Defendant **HOPFENGARDNER** smuggled approximately $120,000 of currency into the United States via a commercial airliner, upon which Defendant **HOPFENGARDNER** traveled "business class" through tickets purchased by Bloom.

60.    On or about March 2, 2004, Bloom caused the wire transfer of funds from accounts he controlled at the Credit Bank of Iraq through its correspondent bank, the National Bank of Kuwait, in the approximate amount of $50,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 175007160, Cloverdale, California.

-15-

61.    On or about March 26, 2004, Defendant **HOPFENGARDNER**, Co-conspirator One and others discussed creating a private security company named Anaconda.

62.    On or about April 7, 2004, Bloom caused the transfer of funds from accounts he controlled at ABN AMRO, S.A. (Romania), in the approximate amount of $10,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

63.    On or about April 20, 2004, Defendant **HOPFENGARDNER** noted in his diary that Co-conspirator Two was reviewing the expenditures related to all DFI monies and that he and others were to respond to her for deficient paperwork.

64.    On or about April 29, 2004, Defendant **HOPFENGARDNER** contacted Bloom to confirm whether Bloom had made the payments for Stein's trip to Disneyland, San Francisco and Hawaii during Stein's leave to the United States in May 2004.

65.    On or about May 5, 2004, Bloom caused the wire transfer of funds from accounts he controlled at Credit Bank of Iraq via National Bank of Kuwait, in the approximate amount of $10,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

66.    On or about May 6, 2004, Defendant **HOPFENGARDNER** provided Bloom with the information on the Sport Utility Vehicle that he would like Bloom to purchase for him: a 2004 GMC Yukon Denali, all wheel drive, fully loaded and summit white in color with a sandstone interior.

67.   On or about May 12, 2004, Defendant **HOPFENGARDNER** sent an e-mail to an Army Colonel recommending that he hire GBG and Phil Bloom.

68.   On or about June 2, 2004, Bloom advised an associate that Defendant **HOPFENGARDNER** would take delivery of the Denali on June 8, 2004.

69.   On or about June 2, 2004, Bloom caused the transfer of funds from accounts he controlled at Credit Bank of Iraq via National Bank of Kuwait, in the approximate amount of $35,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

70.   On or about June 29, 2004, Bloom advised Defendant **HOPFENGARDNER** that "I am sending you 10K as promised."

71.   On or about July 6, 2004, Bloom caused the transfer of funds from accounts he controlled at Credit Bank of Iraq via National Bank of Kuwait, in the approximate amount of $10,000 to Defendant **HOPFENGARDNER**'s account at Exchange Bank, account number 171009004, Cloverdale, California.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT TWO
### 18 U.S.C. § 1956(h)
### (money laundering conspiracy)

72.   Paragraphs 2 through 8 and 11 through 71 of this Information are incorporated by reference as if fully stated herein.

73.    From in or around December 2003 to in or around October 2005, in Iraq and elsewhere, Defendant **HOPFENGARDNER** unlawfully, willfully, and knowingly conspired, combined, confederated and agreed with other individuals known and unknown to commit money laundering in violation of Title 18, United States Code, Sections 1956(h), 1956(a) and 1957.  In connection with such conspiracy, Defendant **HOPFENGARDNER** and others

a.  conducted and attempted to conduct financial transactions, affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, namely wire fraud in violation of Title 18, U.S. Code, Section 1343, with the intent to promote the carrying on of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

b.  caused or facilitated the transfer of a monetary instrument and funds from or through a place outside the United States to a place inside the United States with the intent to promote the carrying on of a specified unlawful activity, namely wire fraud in violation of Title 18, U.S. Code, Section 1343, all in violation of 18 U.S.C. § 1956(a)(2)(A); and

c.  engaged or attempted to engage in monetary transactions, by, through or to a financial institution, in criminally derived property that was of a value greater than $10,000, and was derived from specified unlawful activity, namely wire fraud in violation of Title 18, U.S. Code, Section 1343, in violation of 18 U.S.C. § 1957.

## THE CONSPIRACY AND ITS OBJECTS

74.    It was an object of the conspiracy for Defendant **HOPFENGARDNER**,

Bloom, Stein, Co-conspirators One and Two, and others known and unknown, to engage

in money laundering in violation of Title 18, United States Code, Sections 1956 and 1957,

by:

a. causing or attempting to cause financial transactions involving the

proceeds of specified unlawful activity to pay kickbacks and bribes to Defendant

**HOPFENGARDNER**, Stein and others in connection with the fraudulent award of

contracts to Bloom;

b. causing or attempting to cause financial transactions involving stolen

property, namely funds appropriated by the U.S. government for the reconstruction of

Iraq, including DFI and R3P funds, and through such financial transactions and bulk

currency smuggling to transfer such stolen property from Iraq; and

c. engage or attempt to engage in monetary transactions in criminally

derived property of a value greater than $10,000 and is derived from specified unlawful

activities, namely wire fraud in violation of Title 18, U.S. Code, Section 1343, in

connection with the scheme to defraud and obtain unlawfully money and property from

the CPA and others in Iraq.

## MANNER AND MEANS OF THE CONSPIRACY

75.    It was a part of the conspiracy that, in order to promote the ongoing fraud

conspiracy alleged in Count 1 and to conceal the source, nature, origin and control of the

-19-

proceeds of specified unlawful activity, Defendant **HOPFENGARDNER** and others

would knowingly cause or attempt to cause wire transfers or other financial transactions

to be sent to bank accounts that Defendant **HOPFENGARDNER** controlled from foreign

bank accounts owned or controlled by Bloom, including the following transactions:

| Date | Approximate Amount | Source |
|------|-------------------|--------|
| 2/9/04 | $50,000 | GBG account, Credit Bank of Iraq |
| 2/9/04 | $10,000 | GBG account, Credit Bank of Iraq |
| 3/2/04 | $50,000 | GBG account, Credit Bank of Iraq |
| 4/7/04 | $10,000 | GBG account, ABN AMRO (Romania) |
| 5/5/04 | $10,000 | GBG account, Credit Bank of Iraq |
| 6/2/04 | $35,000 | GBG account, Credit Bank of Iraq |
| 7/6/04 | $10,000 | GBG account, Credit Bank of Iraq |

76.    It was a part of the conspiracy that Defendant **HOPFENGARDNER** and

others would knowingly engage or attempt to engage in monetary transactions in

criminally derived property of a value greater than $10,000, by through or to a financial

institution, with such property being derived from specified unlawful activity, including

the following transactions in the approximate amounts and dates listed below:

-20-

| Date | Approximate Amount | Transfer from | Transfer to |
|------|-------------------|---------------|-------------|
| 2/13/04 | $40,000 | Exchange Bank acct #171009004 | Exchange Bank acct #175007160 |
| 6/2/04 | $22,000 | Exchange Bank acct #171009004 | Harley Davidson dealer |
| 6/7/06 | $22,000 | Charles Schwab acct #9139-3887 | Title Company, Fredericksburg, VA |
| 8/2/04 | $107,000 | Exchange Bank acct #175007160 | Exchange Bank acct #171009004 |
| 8/3/04 | $80,000 | Exchange Bank acct #171009004 | Charles Schwab acct #9139-3887 |
| 4/8/05 | $20,000 | Charles Schwab acct #9139-3887 | Exchange Bank acct #171009004 |

**In violation of Title 18, United States Code, Section 1956(h).**

## FORFEITURE

77.  Pursuant to Title 18, United States Code, Section 981(a)(1)( C) and Title 28,

United States Code, Section 2461( C), Defendant

### Bruce D. HOPFENGARDNER

once convicted of Count 1 (conspiracy in violation of 18 U.S.C. § 371) shall forfeit to the

United States the following property:

a. Any property, real or personal, which constitutes or is derived from

proceeds traceable to the offense.

b.    A sum of money equal to the total amount of proceeds traceable to

each offense, or to the conspiracy to commit violations of Section 1343, in violation of 18

U.S.C. § 371, as charged in Count 1, for which the defendant is convicted.

-21-

78.    Pursuant to Title 18, United States Code, Section 982, Defendant

**Bruce D. HOPFENGARDNER**

once convicted of Count 2 (money laundering conspiracy in violation of 18 U.S.C. §

1956(h)) shall forfeit to the United States the following property:

a.    All right, title, and interest in any and all property involved in violation

of Title 18, United States Code, Section 1956, for which the defendant is convicted, and

all property traceable to such property, including the following: 1) all money or other

property that was the subject of each transaction, transportation, transmission or transfer

in violation of Sections 1956 and 1957; 2) all commissions, fees and other property

constituting proceeds obtained as a result of those violations; and 3) all property used in

any manner or part to commit or to facilitate the commission of those violations; and

b. A sum of money equal to the total amount of money involved in each

offense, or involved in the conspiracy to commit violations of Sections 1956 and 1957, in

violation of 18 U.S.C. § 1956(h), as charged in Count 2, for which the defendant is

convicted.

79.    The property to be forfeited in connection with the convictions on Counts 1

and 2 includes but is not limited to the following:

a. 2004 Harley Davidson Motorcycle, VIN# 1HD1FCW3X4Y629311;

b. 2004 GMC Yukon Denali, VIN #1GKEK63U04J244320;

c. U.S. currency in the amount of $22,400;

-22-

d.  Charles Schwab Investment account #9139-3887 in the amount of $3,121.77;

e.  Exchange Bank accounts 17100904 and 1750077160;

f.  Breitling watch, serial number E56321;

g.  Cameras and related equipment, as follows:

    (1) Cannon EOS 10 D, serial number 0720306228

    (2) Cannon EF 600 MM, serial number 23954

    (3) Cannon EF Lens EF 28-135 MM, serial number 82003938

    (4) Cannon Zoom Lens EF 28-135 MM ET-83C EF 100-400 MM, serial number 258518;

    (5) Cannon Extender EF, serial number 40440;

    (6) Cannon Compact Macro Lens, serial number 273601;

    (7) Cannon Macro Ring Light, serial number 018865;

    (8) Cannon Speedlite 550 EX, serial number 0R1015;

    (9) Cannon Compact Power Adapter, serial number RJ 101845;

    (10) Cannon Remote Switch, serial number RS-80N3;

    (11) Camera Back Pack;

    (12) Cannon Batteries; and

    (13) Four lens filters.

h.  Toshiba Satellite computer, serial number  23021316C;

i.  Apple laptop computer;

j. Real property located at 4423 Lee School Drive, Fredericksburg,

Virginia.

80.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by

Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section

2461, Defendant **HOPFENGARDNER** shall forfeit substitute property, up to the value of

the amount described in paragraphs 78 and 79, if, by any act or omission of a defendant,

the property described in such paragraphs, or any portion thereof, cannot be located upon

the exercise of due diligence; has been transferred, sold to or deposited with a third party;

has been placed beyond the jurisdiction of the court; has been substantially diminished in

value; or has been commingled with other property which cannot be divided without

difficulty.

**Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a); Title 18, United States Code, Section 981(a); and Title 28, United States Code, Section 2461.**


DATED: July 7, 2006.          For the UNITED STATES:

By:    BRENDA K. MORRIS
       Acting Chief,
       Public Integrity Section

       MARK YOST
       PATRICK MURPHY
       Trial Attorneys
       Asset Forfeiture and Money Laundering Section

       JAMES A. CROWELL IV
       ANN C. BRICKLEY
       Trial Attorneys
       Public Integrity Section

       U.S. Department of Justice
       Criminal Division
       1400 New York Ave., NW
       Washington, DC 20530
       (202) 514-1263
       mark.yost@usdoj.gov
       patrick.murphy@usdoj.gov
       james.crowell@usdoj.gov
       ann.brickley@usdoj.gov