## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **Criminal No.** |
| | ) |
| BRUCE D. HOPFENGARDNER, | ) Count One: 18 U.S.C. § 371 |
| | ) (Conspiracy) |
| Defendant. | ) Count Two: 18 U.S.C. § 1956(h) |
| | ) (Money Laundering Conspiracy) |
| | ) Criminal Forfeiture: 18 U.S.C. § 982 |
| | ) |

## FACTUAL BASIS FOR PLEA

The United States of America, by and through the undersigned attorneys of the

United States Department of Justice, Criminal Division, and the Defendant, **BRUCE D.**

**HOPFENGARDNER**, personally and through his undersigned counsel, hereby stipulate

pursuant to the United States Sentencing Guidelines, Section 6A1.1 and Rule 32(c)(1) of

the Federal Rules of Criminal Procedure that, if this case were to go to trial, the

Government could prove the following facts beyond a reasonable doubt:

Beginning in or about December 2003 and continuing until approximately July

2004, in Al-Hillah, Iraq and elsewhere,

1. Defendant **HOPFENGARDNER**, was an officer in the United States Army

Reserve and served as a special advisor to the Coalition Provisional Authority - South

Central Region ("CPA - SC") in Al-Hillah, Iraq. Prior to being recalled to active duty

and assigned to CPA-SC, Defendant **HOPFENGARDNER** was a law enforcement
officer and a chief of police in California.

2. Defendant **HOPFENGARDNER**'s duties at CPA-SC included recommending
the expenditure of funds by CPA-SC officials for law enforcement-related projects related
to the reconstruction of Iraq, including projects involving the Police Academy in Al-
Hillah. Such funds included monies appropriated by the U.S. Congress for the
reconstruction of Iraq known as "R3P" funds and monies representing the proceeds of
seized Iraqi assets repatriated to Iraq for the reconstruction of Iraq known as
Development Funds for Iraq or "DFI" funds.

3. Phillip Bloom is a United States citizen who operated and controlled several
construction and service companies in Iraq and Romania doing business, among other
places, in Al Hillah, Iraq, with CPA-SC.

4. Robert Stein was a DOD contract employee, who served as the Comptroller and
Funding officer for CPA-SC and was assigned to CPA-SC in Al-Hillah, Iraq. In his
capacity as Comptroller and Funding officer, Stein controlled the expenditure of
approximately $82 million dollars in CPA funds which were to be used for the payment
of contract services rendered in Al-Hillah, Iraq for reconstruction projects.

5. Co-conspirator One was an officer in the United States Army Reserve, who
served as the Chief of Staff for the CPA-SC, and was responsible for overseeing the
operations and supervising the CPA personnel, including those responsible for contracts

-2-

entered into and expenditures made by and for the CPA-SC in Al-Hillah, Iraq, including payments authorized by Stein.

6. Co-conspirator Two was an officer in the United States Army Reserve who served under the direct supervision of Co-conspirator One and Stein at the CPA-SC in Al-Hillah, Iraq. Co-conspirator Two's duties included serving as the Deputy Comptroller to Stein and, in his absence, as the acting Comptroller for the CPA-SC.

## THE SCHEME

7. Defendant **HOPFENGARDNER** and others would use their official positions to violate U.S. law and CPA and Defense Department procurement regulations in order to steer contracts to Bloom and his companies in return for Bloom providing Defendant **HOPFENGARDNER** and others with money, goods, and other items of value, including money laundering services for currency that was stolen from Iraq.

8. Defendant **HOPFENGARDNER** would recommend numerous construction projects in Al-Hillah, Iraq, that were intended to be, and would be, steered to Bloom and his companies through a rigged bidding process with one "low bid" from one of Bloom's companies and several "dummy" bids.

9. Further, Defendant **HOPFENGARDNER** would and did meet or communicate with Bloom prior to the commencement of the bidding process for specific contracts, providing Bloom with material information related to the proposed projects.

10. Communications between the co-conspirators involved use of the wires,

including e-mail communications within Iraq, between Iraq and the United States,
telephone communications within Iraq, and wire transfers to the United States from banks
located outside the United States. Frequently, the co-conspirators would use internet
service providers located in the United States to facilitate their communications within
Iraq.

11. Stein would structure the contracts awarded to Bloom in amounts under
$500,000, which was the dollar limit of Stein's authority, in order to conceal the
transactions with Bloom and avoid scrutiny by the CPA's auditors in Baghdad, Iraq, and
others. Further, Stein and others would use their official positions to cause, or authorize,
payment on the fraudulently awarded contracts to Bloom and his companies. In
particular, Stein would authorize payments on CPA Form 44, exceeding without
authorization its $15,000 payment ceiling.

12. Defendant **HOPFENGARDNER**, Stein and others would facilitate and
conceal Bloom's submission of multiple bids on the same CPA contract in the names of
different companies which were either non-existent or controlled by Bloom. The bids
submitted included both the "low" bid and several "high" bids which enabled Defendant
**HOPFENGARDNER**, Stein and others to steer millions of dollars in contracts to Bloom
and his companies.

13. The defendants would solicit and accept money and other things of value,
such as secret employment or potential future employment, business or first class plane

-4-

tickets, watches and other jewelry, alcohol, cigars, sexual favors from women provided by Bloom at his villa in Baghdad and at least one other location, as well as money laundering services, from Bloom in exchange for taking action favorable to Bloom and his interests, for refraining from taking action that was unfavorable to Bloom and his interests, and for unlawfully conveying property to him, including real property and government-owned or acquired personal property such as body armor and other military equipment.

14. The defendants would steal U.S. currency including appropriated funds known as "R3P funds" and DFI funds that were designated to be used for the reconstruction of Iraq. A portion of the stolen currency was smuggled into the United States by Defendant **HOPFENGARDNER**, Stein and their co-conspirators via commercial aircraft. Stein and others also delivered some of the stolen currency to Bloom, who, knowing that the currency was stolen, would deposit it in foreign bank accounts, including accounts under his control in Iraq, Switzerland and Romania. At least a portion of such funds were then transferred to bank accounts controlled by Defendant **HOPFENGARDNER** and Stein or Bloom would make payments on their behalf to purchase real estate, cars, a motorcycle, a recreational vehicle and jewelry.

15. In order to accomplish the crimes charged in the Information, Defendant **HOPFENGARDNER** and his co-conspirators did the following acts, among others, in Al-Hillah, Iraq and elsewhere:

a. In or about December 2003, Defendant **HOPFENGARDNER** and Stein sold seized Iraqi bayonets to Bloom for $6,500.

-5-

     b.  In or about late December 2003, Defendant **HOPFENGARDNER** and Stein met with Bloom in Baghdad, Iraq, at which time Bloom offered to pay them $100,000 "up front" and $10,000 per month thereafter to steer contracts to Bloom.

     c.  In or about early January 2004, Defendant **HOPFENGARDNER** advised Bloom that Bloom would have to submit dummy bids along with his bid in order to receive the CPA-SC contracts.

     d.  Among the projects that Defendant **HOPFENGARDNER** recommended that CPA-SC fund, with the intent that such projects would be steered to Bloom between January and March 2004, included but are not limited to the following:

     (1) Contract 8016, Police Academy building demolition;

     (2) Contract 8064, Police Academy classrooms;

     (3) Contract 8069, Police Academy security wall;

     (4) Contract 8070, Police Academy water system;

     (5) Contract 8089, Mobile Command Posts;

     (6) Contract 8091, Mobile Archeological Command Posts;

     (7) Contract 8092, Police Academy generator/sleeping quarters;

     (8) Contract 8093, Police Academy living quarters; and

     (9) Contract 8167, Demolition of Ba'ath Party Headquarters.

     e.  Bloom, in concert with Stein and Defendant **HOPFENGARDNER** and others, submitted dummy bids to make it appear that there were other "legitimate" bids on

-6-

the contract solicitations, when in truth, Defendant **HOPFENGARDNER** knew it was a ploy to avoid scrutiny and allow the co-conspirators to steer the contracts to Bloom.

16. On or about January 29, 2004, Defendant **HOPFENGARDNER** requested that Bloom pay for the air fare for his trip to and from the United States for leave and the air fare for a trip he and his spouse planned to take from San Francisco to Fort Lauderdale while on leave.

17. On or about January 30, 2004, Defendant **HOPFENGARDNER** provided Bloom with his bank account information in the United States so that Bloom could wire transfer $50,000 into **HOPFENGARDNER**'s account.

18. In exchange for his actions to defraud CPA and others by taking action that was favorable to Bloom and his interests, in violation of law and regulation, among the items received by Defendant **HOPFENGARDNER** are the following payments, goods or items of value:

a. On or about February 9, 2004, Defendant **HOPFENGARDNER** received approximately $50,000, which Bloom wire transferred from Iraq to his account at Exchange Bank, Cloverdale, California.

b. On or about February 9, 2004, Defendant **HOPFENGARDNER** received approximately $10,000, which Bloom wire transferred from Iraq to his account at Exchange Bank, Cloverdale, California.

c. On or about March 2, 2004, Defendant **HOPFENGARDNER** received approximately $50,000, which Bloom wire transferred from Iraq to his account at Exchange Bank, Cloverdale, California.

d. On or about April 7, 2004, Defendant **HOPFENGARDNER** received approximately $10,000, which Bloom wire transferred from Romania to his account at Exchange Bank, Cloverdale, California.

e. On or about May 5, 2004, Defendant **HOPFENGARDNER** received approximately $10,000, which Bloom wire transferred from Iraq to his account at Exchange Bank, Cloverdale, California.

f. On or about June 8, 2004, Defendant **HOPFENGARDNER** received a 2004 GMC Yukon Denali, valued at approximately $50,000, which was purchased by Bloom for **HOPFENGARDNER**.

g. On or about June 2, 2004, Defendant **HOPFENGARDNER** received approximately $10,000, which Bloom wire transferred to his account at Exchange Bank, Cloverdale, California.

h. On or about July 6, 2004, Defendant **HOPFENGARDNER** received approximately $10,000, which Bloom wire transferred to his account at Exchange Bank, Cloverdale, California.

19. In or about late February 2004, with the assistance of Stein, Defendant **HOPFENGARDNER** stole approximately $120,000 of funds appropriated by the U.S.

-8-

government for the reconstruction of Iraq, promising to use a portion of the funds to pay certain of Stein's debts in the United States.

20. On or about March 1, 2004, Defendant **HOPFENGARDNER** smuggled approximately $120,000 of currency into the United States via a commercial airliner, upon which Defendant **HOPFENGARDNER** traveled "business class" through tickets purchased by Bloom.

From in or about December 2003 to in or about October 2005, in Iraq and elsewhere,

21. Defendant **HOPFENGARDNER**, Stein, Bloom and others knowingly

a. caused or attempted to cause financial transactions involving the proceeds of specified unlawful activity to pay kickbacks and bribes to Defendant **HOPFENGARDNER**, Stein and others in order to promote the scheme involving the fraudulent award of contracts to Bloom, while knowing that such funds involved in the financial transactions were the proceeds of unlawful activity;

b. caused or attempted to cause financial transactions involving stolen property, namely, funds appropriated by the U.S. government for the reconstruction of Iraq, including DFI and R3P funds, and through such financial transactions and bulk currency smuggling to transfer such stolen property from Iraq; and

c. engaged or attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful

activities, namely wire fraud in violation of Title 18, U.S. Code, Section 1343, in connection with the scheme to defraud and obtain unlawfully money and property from the CPA and others in Iraq.

22. To promote the scheme and to conceal the source, nature, origin and control of the proceeds of specified unlawful activity, Defendant **HOPFENGARDNER**, Bloom and others knowingly caused the following wire transfers of such proceeds to be sent to bank accounts that Defendant **HOPFENGARDNER** controlled from foreign bank accounts owned or controlled by Bloom, including the following transactions:

| Date | Approximate Amount | Source |
|---|---|---|
| 2/9/04 | $50,000 | GBG account, Credit Bank of Iraq |
| 2/9/04 | $10,000 | GBG account, Credit Bank of Iraq |
| 3/2/04 | $50,000 | GBG account, Credit Bank of Iraq |
| 4/7/04 | $10,000 | GBG account, ABN AMRO (Romania) |
| 5/5/04 | $10,000 | GBG account, Credit Bank of Iraq |
| 6/2/04 | $35,000 | GBG account, Credit Bank of Iraq |
| 7/6/04 | $10,000 | GBG account, Credit Bank of Iraq |

23. Defendant **HOPFENGARDNER** knowingly engaged in monetary transactions in criminally derived property of a value greater than $10,000, by through or

-10-

to a financial institution, with such property being derived from specified unlawful

activity, including the following transactions in the approximate amounts and dates listed

below:

| Date | Approximate Amount | Transfer from | Transfer to |
|------|--------------------|--------------|-------------|
| 2/13/04 | $40,000 | Exchange Bank acct #171009004 | Exchange Bank acct #175007160 |
| 6/2/04 | $22,000 | Exchange Bank acct #171009004 | Harley Davidson dealer |
| 7/6/04 | $20,000 | Charles Schwab acct #9139-3887 | Title Company, Fredericksburg, VA |
| 8/2/04 | $107,000 | Exchange Bank acct #175007160 | Exchange Bank acct #171009004 |
| 8/3/04 | $80,000 | Exchange Bank acct #171009004 | Charles Schwab acct #9139-3887 |
| 4/8/05 | $20,000 | Charles Schwab acct #9139-3887 | Exchange Bank acct #171009004 |

## **FORFEITURE**

24. That the following property constitutes proceeds of the scheme, or traceable

thereto, or property involved in money laundering:

    a. 2004 Harley Davidson Motorcycle, VIN# 1HD1FCW3X4Y629311;

    b. 2004 GMC Yukon Denali, VIN #1GKEK63U04J244320;

    c. U.S. currency in the amount of $22,400;

    d. Charles Schwab Investment account #9139-3887 in the amount of $3,121.77;

    e. Exchange Bank accounts 17100904 and 1750077160;

    f. Breitling watch, serial number E56321;

-11-

g.  Cameras and related equipment, as follows:

(1) Cannon EOS 10 D, serial number 0720306228

(2) Cannon EF 600 MM, serial number 23954

(3) Cannon EF Lens EF 28-135 MM, serial number 82003938

(4) Cannon Zoom Lens EF 28-135 MM ET-83C EF 100-400 MM, serial number 258518;

(5) Cannon Extender EF, serial number 40440;

(6)  Cannon Compact Macro Lens, serial number 273601;

(7)  Cannon Macro Ring Light, serial number 018865;

(8)  Cannon Speedlite 550 EX, serial number 0R1015;

(9) Cannon Compact Power Adapter, serial number RJ 101845;

(10) Cannon Remote Switch, serial number RS-80N3;

(11) Camera Back Pack;

(12) Cannon Batteries; and

(13) Four lens filters.

h.  Toshiba Satellite computer, serial number  23021316C;

i.  Apple laptop computer; and

j.  Real property located at 4423 Lee School Drive, Fredericksburg, Virginia.

DATED: July 7, 2006.              For the UNITED STATES:

                                  BRENDA K. MORRIS
                                  Acting Chief, Public Integrity Section

                                  _____
                                  MARK YOST
                                  PATRICK MURPHY
                                  Trial Attorneys
                                  Asset Forfeiture and Money Laundering Section

                                  _____
                                  JAMES A. CROWELL IV
                                  ANN C. BRICKLEY
                                  Trial Attorneys
                                  Public Integrity Section

                                  U.S. Department of Justice
                                  Criminal Division
                                  1400 New York Ave., NW
                                  Washington, DC 20530
                                  (202) 514-1263
                                  mark.yost@usdoj.gov
                                  patrick.murphy@usdoj.gov
                                  james.crowell@usdoj.gov
                                  ann.brickley@usdoj.gov