IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNSEALED**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 06-cr-204-CKK |
| ) | |
| BRUCE HOPFENGARDNER, ) | |
| ) | ~~UNDER SEAL~~  FILED |
| Defendant. ) | |
| ) | MAY 29 2007 |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**GOVERNMENT'S SENTENCING STATEMENT AND DEPARTURE MOTION BASED UPON SUBSTANTIAL ASSISTANCE TO AUTHORITIES UNDER U.S.S.G. § 5K1.1**

COMES NOW the United States of America, by and through its undersigned counsel, and hereby files the instant memorandum in aid of sentencing for the above-captioned matter.

The Government has reviewed the Pre-sentence Investigation Report prepared by the United States Probation Office and has found no factual inaccuracies contained therein.

I.   **Background**

On August 26, 2006, Bruce D. Hopfengardner, a retired U.S. Army Lieutenant Colonel, pleaded guilty to a two-count information in the District of Columbia, charging him with conspiracy (18 USC § 371) and money laundering conspiracy (18 U.S.C. § 1956(h)). Hopfengardner is scheduled to be sentenced on June 25, 2007. Hopfengardner is currently released on bail. Two of Hopfengardner's co-conspirators, Robert Stein and Philip Bloom, have previously pleaded guilty and were sentenced earlier this year. On February 1, 2007, Hopfengardner's remaining co-conspirators, Colonel Curtis Whiteford, Lieutenant Colonels Debra Harrison and Michael Wheeler, and civilians William Driver and Seymour Morris, were indicted in the District of New Jersey and are scheduled to stand trial on February 5, 2008. In the event of a trial, the government anticipates calling Hopfengardner as a witness.

II. **Guidelines Calculation**

There are no guidelines calculation disputes between the parties' agreed upon guideline calculations memorialized in the plea agreement and the calculation recommended by the Probation Office.

In the Plea Agreement, the parties agreed that the appropriate Sentencing Guidelines for the conspiracy and money laundering offenses (Counts One and Two) are as follows:

> Base Offense Level under 2B1.1(a)(1) .................................... 7
>
> 2B1.1(b)(1)(G) Amount of Loss of More than $200,000 and less than $400,000  12
>
> 2S1.1(b)(2)(B) Conviction under 18 U.S.C. § 1956 ........................ 2
>
> 3B1.3 Abuse of Position of Trust ...................................... 2
>
> TOTAL ............................................................ 23

The parties applied the 2004 Sentencing Guidelines because the offense conduct was committed between December 2003 and June 2004. Hopfengardner is in criminal history category I.

III. **Acceptance of Responsibility**

Consistent with the terms of the Defendant's plea agreement, the Government hereby moves the Court for a 3-level reduction in the Defendant's applicable guideline range pursuant to U.S.S.G. § 3E1.1(a) and (b), yielding a recommended net offense level of 20 and a guideline range of 33 to 41 months imprisonment.

IV. **Departure Motion Based Upon Hopfengardner's Substantial Assistance**

The Government submits that Hopfengardner's assistance to law enforcement has substantially benefitted the prosecution of other co-conspirators in this case. Accordingly, the

government moves for a downward departure under U.S.S.G. § 5K1.1 based upon Hopfengardner's substantial cooperation in this case.

The Government approached Hopfengardner in the fall of 2005 and confronted him with evidence that he had received approximately $175,000 in wire transfers from Bloom and that Morris had, at Bloom's direction, arranged for the purchase of a Yukon Denali for Hopfengardner. Hopfengardner voluntarily admitted that he received these wire transfers and other things of value from Bloom in exchange for Hopfengardner's assistance in ensuring that Bloom's companies received contract awards.

Once approached, Hopfengardner did not hesitate to provide extensive information about the bribery, bid-rigging, wire fraud and money laundering scheme that he participated in at the CPA-SC. Hopfengardner provided an overview of the conspiracy at the CPA-SC and his role therein. He candidly acknowledged that he accepted money and other gifts from Bloom and Stein in exchange for providing Bloom with information about upcoming contracts so that Bloom would have all of the cost information and could outbid competing contractors from the CPA-SC. Hopfengardner, as the first defendant in this scheme to cooperate with the government, provided key evidence regarding the other co-conspirators' roles in the conspiracy.

At the outset of his cooperation, Hopfengardner freely provided investigators approximately $22,000, the remainder of $120,000 Hopfengardner smuggled into the United States in 2004. Without Hopfengardner's admission about and surrender of the money, the Government would have been unaware of this additional felonious act. Hopfengardner also voluntarily returned a computer and watch that he had received from Stein as part of the illegal scheme, and camera equipment that he had ordered and paid for using CPA-SC funds.

Hopfengardner turned over his own personal electronic devices for forensic inspection as well. In the early stages of his cooperation, Hopfengardner also made recorded telephone calls to Bloom and another CPA official. These telephone calls provided the government with information regarding Bloom's pending travel to the United States, allowing the government to draft arrest documents and arrest Bloom when he entered the United States in October 2005. This assistance was particularly important because Bloom was an expatriate who did not travel frequently to the United States. It would have been substantially more difficult for the government to pursue charges against Bloom if he were in Iraq, Romania, or some other foreign location.

Since the time of his plea, Hopfengardner has worked with prosecutors and FBI, SIGIR, IRS, and ICE agents during numerous debriefings to build a case against Stein, Bloom, Harrison, Wheeler, Whiteford and Morris. The information that Hopfengardner provided was utilized in developing probable cause to arrest Bloom and Stein, and was also utilized in securing an indictment against Harrison, Whiteford, Wheeler and Morris. Hopfengardner testified about the illegal scheme before a Grand Jury, and has also agreed to and is expected to testify against Harrison, Wheeler, Whiteford and Morris at trial in New Jersey.

Hopfengardner has been candid about his role in the conspiracy and about the types of benefits he received. In one area, that of his plan to form a security company with Stein and Whiteford when they left the military, Hopfengardner initially mitigated the level of planning and actions taken in furtherance of the company's formation. Ultimately, however, Hopfengardner provided full disclosure of his intentions to form the security company, the actions he took to

participate in the formation of the company, and conversations with Stein, Whiteford and others, as they related to these plans.

The Defendant has fully acknowledged his criminal role in the conspiracy and has fully embraced his role as a cooperating defendant. In its totality, we believe Hopfengardner's cooperation to date satisfies the "substantial assistance" standard set forth in U.S.S.G. Section 5K1.1. However, the Government has significant concerns about the Defendant's continued mitigation of his role in the conspiracy and his willingness to fully assist the government in its ongoing efforts to prosecute corruption stemming out of Iraq.

IV.  **Applicable Law**

In the wake of United States v. Booker, federal sentencing is now governed by 18 U.S.C. § 3553(a), which states that district courts "shall consider" several sentencing factors. 543 U.S. 220 (2005). In addition, the Supreme Court in Booker made the Guidelines sentencing range a required consideration, see § 3553(a)(4); but Booker "permits the court to tailor the sentence in light of other statutory concerns as well." Booker, 543 U.S. at 220.

V.  **The Sentencing Factors Support a Sentence Within the Government's Proposed Guidelines Range**

The § 3553(a) factors firmly support a sentence within the Government's recommended Guidelines range. The first factor is the nature and circumstances of the offense and the history and characteristics of the defendant. The offenses of conviction were highly complex and flagrant violations of criminal law committed with numerous public officials imbued with the public trust during a time of war. The defendant's participation was critical to the success of the conspiracy; indeed, without his assistance in recommending Bloom's companies for various

contracts, Bloom would not have received the substantial sums of money he earned and then passed along to Hopfengardner and other co-conspirators.

The second factor is the history and characteristics of the defendant. The government acknowledges that the defendant has no criminal history and, until the commission of the instant offenses, appears to have lived a law-abiding life.

The third factor is the need to reflect the seriousness of the offense and to promote respect for the law. Hopfengardner and his co-conspirators undermined the effectiveness of the United States' mission to rebuild the Republic of Iraq by stealing U.S. appropriated and Iraqi funds and goods meant for the reconstruction of the infrastructure of Iraq. The seriousness of such offenses are readily apparent from the charges themselves, and are of particular concern when committed by a military officer.

The public expects government employees and elected officials to conduct themselves, at a minimum, in accordance with the criminal laws. Hopfengardner used his status as a military officer for his own, and his co-conspirators', private gain. This factor weighs heavily against deviation from the sentencing guidelines range advanced by the Government.

The fourth factor is the need to deter criminal conduct. The public has a compelling interest in deterring crimes involving public officials, as these persons, because of their special skills and access, are uniquely positioned to harm to the public. The Defendant was involved in widespread and systemic corruption and committed serious crimes in order to further his own financial means and should not be afforded leniency by the Court absent truly compelling circumstances.

The fifth and sixth factors – the need to protect the public and to provide the defendant with rehabilitative or other training or medical care have little or no relevance here.

Finally, the seventh factor is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar offenses. Defendant Hopfengardner will be the third defendant to be sentenced for the crimes delineated in the Information. Defendant Hopfengardner was the first to accept responsibility for his role in this conspiracy, and signed his plea agreement well in advance of Defendants Bloom and Stein. Stein and Bloom received a recommendation of 2 and 3 level departures, respectively. Stein did not mitigate his role, and provided extensive and timely cooperation to the Government's investigation. Bloom has mitigated his role but also began cooperation shortly after his arrest and has provided the government with significant documentary evidence, including emails sent during the course of the conspiracy. In these prosecutions, there is no issue with respect to sentencing disparity.

VI.     **Sentencing Recommendation**

Taking into account all of the sentencing factors of Section 3553 and the Defendant's assistance to the Government, the Government hereby moves the Court for a departure from the recommended sentencing guidelines under 5K1.1 and depart 4 levels downward, yielding a final offense level of 16, Criminal History I, which keeps defendant Hopfengardner in Zone C and yields a guideline range of 21-27 months.

Although Hopfengardner has cooperated with the Government's investigation, the Government recognizes the significance of the felonies he has committed. Balancing all of these

factors, the Government hereby asks the Court to sentence the Defendant to a term of 21 months imprisonment.

Finally, given the substantial forfeiture and restitution claims pending against the Defendant and his ability to pay, the Government does not ask the Court to impose a fine.

        Respectfully Submitted,

        DATED: May 29, 2007

        WILLIAM WELCH
        Chief, Public Integrity Section

        *[signature]*
        Trial Attorney
        U.S. Department of Justice
        Criminal Division
        Public Integrity Section
        1400 New York Ave., NW
        Suite 12100
        Washington, DC 20005
        (202) 514-1412
        Ann.brickley@usdoj.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that on this 29TH day of May, 2007, I caused to be served by federal express a copy of the foregoing filing:

>John Perazich, Esq.
>1835 Irving St., NW
>Washington, D.C. 20010

>*/s/ Ann Brickley*
>ANN C. BRICKLEY
>Trial Attorney
>U.S. Department of Justice
>Criminal Division
>Public Integrity Section
>10th & Constitution Ave., NW
>Washington, DC 20530
>(202) 514-1412
>Ann.brickley@usdoj.gov